Good morning, Your Honor. May it please the Court. Lawrence Rolfing on behalf of the Plaintiffs and Appellants for Mista Desai. After the parties had filed their opening briefs, this Court decided the case of Johnson v. Buckley. And that case, I think, resolves the question of whether the statute means 1,000 hours applies to all three of the alternatives set forth in the statute. And that case resolves that issue. The question that's raised by Johnson is whether the Secretary of the Treasury's Internal Revenue Code regulation on the question of elapsed time can be validly applied to this particular pension plan. Interestingly, Continental Can's pension plan never raised the regulation as a defense, but merely contended all along that the statute allowed it to count vesting service as it did in this case, which is a modified elapsed time method. In Johnson, this Court noted that the elapsed time regulation was promulgated the same time and as an alternative to the hours of service method, which credits hours investing for benefit accrual and benefit accrual if an employee works 1,000 hours within a 12-month period. In this case, Continental Can does not use the elapsed time method for determining hours of service for benefit accrual purposes. On page 114 of the excerpts of record, we have notations from the pension plan that Ms. Desai began working in 1974, worked in 1975, and thereafter until 1983, which is not reflected on that page. Under the elapsed time method, Ms. Desai would have to be credited with one year of service from February of 74 to February of 75. The pension plan didn't do that. The pension plan granted Ms. Desai .917 years of service in 1974, and in 1975, granted her .833 years of service, in which she worked 1,611 and 1,382 hours respectively. I noted in the, I think, the plan that was in effect when she started, which is the plan, or at least there's a summary of your retirement benefits. I'm looking at ER 127. Effective June 1980, expires May 31, 1983, that when they're talking about ERISA restored credited service on ER 129, it says in calculating restored time, the entire calendar year in which your regular credited service started, if you worked 1,000 or more hours in that ERISA credited service for each year, you worked at least 1,000 hours. Did that change at some point in the methodology of calculation under these plans, in the subsequent plan? Well, the plan has certainly never explained that. That was one of the points that Ms. Desai argued in her own personal appeal to the pension plan, trying to obtain benefits on her own, without the assistance of counsel. She actually pointed to that language and argued it to the plan and was rebuffed. So she may argue about continuing the argument. Have you continued the argument? Yes. I mean, could they have changed to a calendar year basis at some point? They're permitted to do that, even under Johnson, as I understand. That's correct. They are permitted to make that change. So she gets credit for the hourly methodology, as long as that was unchanged, and then it shifts to calendar year. Is that your theory? Whenever they decided to change, assuming they did? At this point in time, we're talking about a plan year that expired May 31, 1983. Ms. Desai would have had five full months of employment in 1983. She actually ended up working until September 2, 1983, then returned for a brief period of time, approximately 80 hours, in 1984. The other interesting point to the plan's assertion that it is allowed to use the elapsed time method is that the regulation makes clear that Ms. Desai is entitled to an additional year of service if she was laid off. And Johnson confirms that a temporary layoff, you get the tail end, you get the one year of additional service. And Ms. Desai, on page 131 of the administrative record, says that she was laid off from the Santa Ana plant in 1984, that she worked in Cincinnati prior to that, but then she was laid off. And so because she was laid off, she's entitled to the tail. That's the balancing effect of the elapsed time method, is that if an employee is let go on a temporary basis, they can get up to an additional year of service unless they quit or are affirmatively discharged. The plan never had in the record in this case any evidence that she was ever permanently discharged from any position with Continental Camp or any of its affiliates. So she's entitled to the year under any one of those three alternative methods of calculation. The final basis that Ms. Desai set forth to the district court in terms of her ability to claim that she had a vested right benefit is that she was hired prior to June 1, 1980, that she worked more than five years, she was hired before the age of 60, and therefore she's entitled to a deferred vested benefit. The plan countered that by saying that Ms. Desai is not entitled to a deferred vested benefit under that provision of the plan because she didn't have to work until age 65. Well, we're talking about deferred vested benefits. This is a deferred benefit, not an actual retirement benefit under a special provision of five-year service plan. It's deferred. Let me ask you a question. She worked for Continental Camp from February of 1974 to September of 1983. Is that right? That's correct, Your Honor. Okay, it's about nine and a half calendar years. Now, when she left, she was 49 years old. And then she received a letter from the manager of human resources that told her that she would be eligible for some deferred vested benefit from the company upon her retirement. Correct. Okay. So, what does that mean? Well, that would be consistent, the statement from Mr. Kozeniak would be consistent with the proposition that she's entitled to service, as Judge Fischer pointed out, under the 1,000 hours of service provision. It would be consistent with a layoff from her employment in 1983. She'd be entitled to a one-year tail. And it's a construction of the plan. This is an individual that's in charge of advising people. And Ms. Desai acted reasonably. Did you argue a stopple here? Yes, we argued that this provision, this letter, allows her to rely on that and it's enforceable. But you haven't argued a stopple in your brief. Did you argue it before the district court? Did you argue that the company has stopped from denying benefits now for having told her in the letter when she retired that she was eligible for the plan? Why aren't you arguing that the company has stopped from denying it now? Your Honor, what I did argue, I didn't make that particular argument, that's true. What I did argue was that this letter constitutes a construction of the plan, it's an interpretation of the plan that breathes life into and makes valid Ms. Desai's other contentions and that It's not much of an interpretation of the plan. I mean, it's just a, it's a, it's just, I mean, it's completely conclusory. Well, it does set forth the relevant facts that Progerson pointed out, that she was hired February 21, 1974 and separated September 2, 1983, and that she was therefore entitled to some deferred, vested benefit from the company. But you didn't, you didn't, you didn't raise a stopple in your, in the pleadings, did you? No, Your Honor, I did not. Well, I mean, she, when she, when she was terminated, she was 49, so then she waited 16 years and then wrote a letter in 98 to Continental telling the company that she turned 65 the following January, well, a month away or so. She waited until her normal retirement age. And she was told what, that the, that the letter was a misinterpretation of the plan, or what was she told? Well, she was told that it was, that Mr. Kozenak had spoken to the company's pension department and then confirmed that she was entitled to a deferred, vested benefit, which conforms with all three of the analyses that we've provided. It's consistent with every one of the theories that Ms. Desai has set forth, that she has a thousand hours, that she's entitled to the one-year tail, and that she's entitled to the hired before 1980 and had more than five years and therefore entitled to a benefit at age 65. Did, did you depose Mr. Kozenak? No, I was, I did not, Your Honor. I wasn't aware, not aware that he was ever available. You don't know whether he's still alive? Did you ever try deposing Mr. Roldeschweiler? I did not, Your Honor. Part of the reason I did not is, is the, the conflict in, in these, this is clearly an abuse of discretion case, and the case law indicates that under an abuse of discretion case, the record's closed. Absolutely. But you argued that the September 2nd letter from Mr. Kozenak constituted Continental's interpretation of the, of the plan. If that's an interpretation of the plan and an interpretation which they later changed against her, wouldn't that, wouldn't that be an abuse of discretion? Yes, it was on its face. And wouldn't it be relevant to figure out why, whether or not this was an interpretation of the plan of why, why they'd given her this advice in 1983 and then changed their mind years later? It's apparent on its face that it's a change in interpretation, and that's what we argued before the district court. Did you seek any other discovery as to, as to any other, any other evidence contemporaneous with the 1983 letter that would have indicated that this in fact was an interpretation of the plan and not just a mistake in somebody's calculations? No, Your Honor. Okay. So it is possible then that the 1983 letter was simply the result of somebody mis-adding time rather than constituting an interpretation of what hours of service meant or what the 12, 12-month provision meant. Anything is possible, Your Honor, but when Mr. Kozniak says, sets forth the relevant facts serially, the higher date, February 21, 74, the separation date, September 28, 1983. Somebody could have just mis-added the date. Somebody could have just mis-calculated. We didn't have to be off by very much here. We only had to be off by a couple of months. And so it's possible that there's a human error here rather than a change in interpretation. And it's very difficult to see from the 1983 letter that this really constitutes a clear interpretation of the plan as opposed to somebody mis-adding the, mis-adding her time. And we don't really know which of those theories is right and we didn't do the work to try and figure that out. I wouldn't expect the human resources manager to make that kind of mistake. 74 to 83 is 9. That's third grade math, Your Honor. I wouldn't insult Mr. Kozniak's intelligence in that way. Can I ask you, along those lines, that letter appears that ER 115, ER 114 is another document that's dated 5-3-83 and it has calculations on it. What's the significance of that document? Well, the significance of that document, Your Honor, is that it sets forth that contrary to the elapsed time method, Continental can actually count at each and every hour. And each and every hour made a difference. And if you didn't have over 1,800 hours, you couldn't get a full year of service credit, which is contrary to the elapsed time method. Okay, so what is the significance? This seems to run the numbers from 74 to 82 through 82. What is the significance of .833 and .917 for 74 and 75? Under the elapsed time method, the plan would actually have to have given Ms. Desai one full year of credit. Credit for a year. That's your argument. Right. But it's over 1,000 hours. But it's over 1,000 hours, so therefore she's entitled to a vesting credit, whether she's entitled to .917 service credits or not. She's entitled to a vesting credit. And has it ever argued that, because it says that, well, maybe I should ask counsel for Continental to understand this, because it seems the calculation, was this attached to or related to the September 2nd letter? These were all sent into the plan by Ms. Desai personally. Well, that's not answering my question. Does it relate to? Is the calculation that she apparently received from Mr. Kozniak's exhibit or ER 114, was that attached to received in conjunction with 115, the letter? No, it was not, Your Honor. They were received separately. Separately. Yes. But he prepared both of these, at least for his signature. Yes, he did. All right. Thank you. Thank you. Good morning. May it please the Court. I'm John Horowitz for the respondent. It would seem to me that the issues in this case are really fairly simple and straightforward. The plan calls for a measurement of time based upon the calendar year. The calendar year adds up to less than 10 years of service. And the abuse of discretion standard has interpreted her to be not entitled, not vested, and not entitled to benefits. Well, there may be like it to be that simple. At least those of, I've been working through it and I don't find it quite that simple. You may be right at the end of the day. But perhaps you could help us understand the significance of the exhibit for ER 114 and its relationship to ER 115, the letter. Well, Your Honor, I will be happy to try. But I have just the record you have as well, along with the fact that ER 114 and ER 115 were considered in depth by the Board itself. Now, Mr. Kozniak was not a member of the Board. And these interpretations are not the work of the Board itself in determining vesting on behalf of Ms. Desai. It's been determined by the Board that the decision, the conclusion by Mr. Kozniak was inaccurate. And that's the best I can do on that interpretation, Your Honor. I will also point out that ER 114 does state at the top that it's an estimated regular credit service. This sounds to me like a document created at the time of her termination to give her some idea where she stood. This would not be the official response of the Board when it comes to her decision as to whether or not she's entitled. But what are we supposed to do with the September 2nd letter from Mr. Kozniak, telling her that she's eligible for benefits? I think, Your Honor, you have to do with that exactly what the Board did with that, was to look at it to determine that that's an error. Mr. Kozniak did not interpret the plan correctly. Mr. Kozniak determined that Ms. Desai would be entitled to some benefit  The Board looked at this in detail. Does it make a difference whether Mr. Kozniak based his opinion on interpretation of the plan or whether he based it on, let's say, an error in calculating her time of service? Well, I think that probably, in the end, it does not, Your Honor. An error in calculating the service would be an error, and an error in interpreting the plan would be a separate error. Could you be stopped from denying coverage here? Possibly, Your Honor, but Estoppa was never argued. And I don't think that Ms. Desai is taking the position that she left her employment on a certain date because it was clear to her that on that date she had vested benefits. She's never taken that position, had she taken it. She was laid off, right? Your Honor, I don't really, I heard counsel say that, and I don't recollect that from the record, and I can't really respond to that. No, she was laid off. Okay, it may well be that she was laid off. She waited all these years, you know, 16 years. And a long time to be checking off days on calendars, huh? And then she came up to her 65th birthday a month before and reminded the company she'd be ready for her pension. Yeah, I think that, Your Honor, the board, for the first time, became aware at that point that someone had told her in the past, someone who was not a board member and not vested with responsibility for interpreting the plan, had made this statement, this error. I mean, didn't the board know, I presume, all along, that someone had the position of the manager for human resources sending out letters to people on their eligibility and making computations? I don't think this was, I wouldn't suppose this was the first time a letter was ever sent out to someone who was laid off. Right, you certainly wouldn't think so, Your Honor. But the point is, just in her category of being under 10 years and over 5 years and having someone make that determination in a layoff situation where people are entitled to these letters and estimates. Did the board know, I suppose the record doesn't even show this, whether the manager was sending out letters of this nature? People are fired and laid off and he was sending out these letters. Of course, I don't know what the board knew. But the board met and considered this case several times and looked at it very closely and made these determinations under the power to interpret the plan and the facts in the background. And all of this was looked into by the board. And I think the board intended to act in a reasonable way. It doesn't seem very fair, does it, that she gets this letter and then she relies on it and waits the 16 years. I'm sure she did other things, but she's planning her retirement. How much was she supposed to get a month, if this at all goes? It's not a lot of money, Your Honor. I don't have the exact figures. She would have been entitled to something had she vested. Well, just give us a ballpark. Your Honor, I can't give you a ballpark. I didn't examine the actual dollars involved of her plan. You say the board had... What's the source of the board's discretionary authority? Well, the source is in the amendments to the plan that came down with the statement. On page 232 of the CR, it's the establishment of rules. And in that, it states that the general pension board shall have total and complete discretion. Well, that came down in 1990. That was after she left. Where does it get its authority to retroactively go back and decide that something in 1983 is within its discretion? There was no mechanism. There's nothing in the plan, as I read it, that governed her benefit claim. It gave the board that authority. Well, the language... Sorry. And therefore, as you said, it didn't come to the board's attention. But there was no reason for it to come to the board's attention. Why would Ms. Desai, having been told she was getting benefits, have any reason to go to the board if she had been denied benefits at that point? She could have gone to the board. But au contraire, she was told she had benefits. She comes along 16 years later, and the board, now having empowered itself with discretion, decides that in the exercise of its after-acquired discretion can interpret it. But if it didn't have that discretion in 1983, then our review is de novo. It doesn't seem to me that your case is quite as simple as you seem to think. Well, Your Honor, you're right. The language, the discretionary language, is much more explicit in what I just read you than it was in the earlier version of the plan, which did give the board some discretion, but I don't have that... You don't like that language? I would like to be able to, Your Honor, but I would have to thumb through and find it. I don't have that earmarked at this point, but I can certainly... Well, I went through the 1983-86 plan, and I don't see anything in it that says anything, in that document, that says anything about the board's authority. Well, that's my recollection, is it did not give the board total and complete discretion. I certainly recall that. So that would make our review de novo, wouldn't it? Well, Your Honor, that question I'm not convinced would make your review de novo, because the plan, I think, as amended, reflects the interpretation of the plan as it must be, as it was for nine years before her case came before the board. And again, I say that the board, I think, intended to act reasonably in this case. It would have looked at every bit of evidence. We don't know what it did and whether it was reasonable. We don't know anything. All we know is that that's the position that's being taken as a matter of discretion. But if there isn't that discretion, then we look to the plan. It seems on the face of it, she fits within the five-year provision, because I don't see any qualifier on the face of the language that says anything about her having to be employed at age 65. Well, Your Honor, I think that there is evidence in the way the plan is written that she must be employed at the age of 65. Where is that in plain language? Well, it's the court, I think, in Judge Otero's opinion, I think he addresses that as well. He says that if... I'm not going to point to explicit language, Your Honor, but to the intention of the fact that the provision comes below the 10-year provision, states a separate provision for people who were hired before a certain date, and makes the condition that those people can vest within five years, and the board interpreting that to mean, and the court, that the only meaning of that could be that those people would not have the opportunity to continue working and gain the 10 years, and therefore this condition would be put into effect when they reach the age of 65 while continuing to work. Well, that's an interpretation, but the fact is that the plain language, which is echoed in the letter that was sent to her, if you take that language and the letter, it seems to me that... Well, I think... ...that may well explain why Mr. Kosiak wrote the letter as he did. Well, certainly, Your Honor, but I think that you would have to... Surely, the judges, I recall, someone argued that this would make the language superfluous. It doesn't make it superfluous at all. It defines a fairly defined class. You had to have started work for the company before June 1980. Right, Your Honor, but I think that... It doesn't apply thereafter, but... I think you have to look at the language in the context of the plan, and what it would be doing is saying you need 10 years, but if you're hired before 1980, you only need 5 years, and there... What's wrong with that? Well, it seems to be a benefit to those people who were hired before that time with no basis, no discernible reason why that should make a difference. Rewarding early... You know, rewarding employees who have been with the company longer. The companies make lots of changes in their benefits, and they are entitled to start new levels, but that doesn't mean they can't provide or grandfather in existing employees, and this looks as if that's what was done here. Well, I think that you would have to assume that the plan was intending to award early people who were hired at a certain point in time and were a certain age, and I don't know that the plan would intend to do that. The plan wants to reward people who have worked for the company for periods of time, and measured in calendar years, and the only reason... I think the board's interpretation and the court's interpretation were correct. The only reason for having this 5-year period is to be able to give benefits to these people who were hired at a certain time, but because of their age, were not going to be entitled to work... At the time that they reached 65, they wouldn't have been entitled to get the 10 years in. So, you know, I think that's very clear why that wording would be in there. It's maybe unfortunate that it didn't say, I'm still working, but I think that if you read it as just giving some people 5 years and some people 10 years, and basing it only upon a date of hire, that that would be an unreasonable interpretation of the plan, and I think that would be not what the intent of the vesting was all about, and it would be superfluous. Well, the point that I would make, Your Honor, is that I still do see this as a simple question with respect to the elapsed time issue that the plan calls for a calendar date measurement of time, and that the 10 years have not been met, and to point to the Johnson v. Buckley case, that this circuit handed down, following the 7th and 8th circuits as well, that that is an appropriate way to measure time, and if you have someone who worked 9 years and 6 months, that they did not meet the 10-year criteria, and if you have someone who stops working at the age of 49 and has less than 10 years, that they're not going to qualify under the 5-year plan for people who... She didn't stop working. She was laid off. Correct. But her... Huh? But termination, I think, even under Johnson v. Buckley, has been... You know, it was a laid off, but it was permanent, and I think that everyone in this case has interpreted it as being permanent, and then, you know... So I think that that would mark the end date of her employment period. Well, that's not the way the human resource manager interprets all this. No, Your Honor, but again, you know, it's... He was looking at the plan as it existed at the time of termination. Well, it's hard to know what he was looking at, but his calculations... But he wrote the letter. Well, sure, he wrote the letter, and I'm not questioning he wrote the letter. And he came up with less than 10 years of employment, but came up with a conclusion that she would be entitled to benefits under the 5 years. And I don't think that that was a correct interpretation of the plan, and I don't know that the board and the plan should be stuck with an incorrect interpretation. Wasn't that the plain language of the plan? Pardon me? Wasn't that the plain language of the plan, that she'd be entitled to, say, the 5 years? No, Your Honor, I don't think it was the plain language in the plan. When the plan is read in context, and there is a 5-year standard following a 10-year standard, and the only difference is the measurement of time, I don't think that that was the plain language, or certainly not the intent of the plan. Well, the human resources guy thought it was, apparently. Right, well, had there been an estoppel argument, you know, we could have maybe tracked all of this down, but we didn't see any need to go back and find this person who was clear to the board, and several members of the board, over a period of time, that that was an erroneous decision. It was just an error, and, you know, they felt like... You have that de novo review, as Judge Fischer pointed out, that all goes by the boards. Well, then, I think, Your Honor, you would find that if you were to look at this case, and say, because this error was made, that the board is going to be stuck by it, that you would be giving a benefit that is not due under the plan, and is only a benefit due because of someone's miscalculation at a point in time, you know, many years before, with those people not being board members as vested with any authority. Reading the plain meaning of the plan at the time she was laid off. I'm sorry, Your Honor, the question was? I was talking about the language of the plan at the time she was laid off. I think the five-year language was the same language at the time she was laid off, and that the five-year language cannot reasonably be interpreted to mean that she's entitled to vested benefits, having worked, you know, less than ten years total, and not employed at the time that she turned the age of 65. I would bet that the average employee reading that language would read it reasonably as she did. Now, you may have a different interpretation and understand it in a larger context, but an employee probably could easily read it just as she is arguing. Possibly, Your Honor, but I would suggest that if they read the two provisions, the ten-year and then the five-year, if they go right to the five-year and read that in isolation, perhaps, Your Honor, Your Honor's point is broader. My point is you read through the ten-year and then you find out that if you fit within a class of employees hired before 1980 and before you were 60, you only have to satisfy five years. That may be their interpretation, Your Honor. Okay. Thank you. Yeah. I know I was way over time. Well, you really want to answer me? Do you have any questions? Huh? I was way over time, Your Honor. If you have any questions, I'd be happy to answer them. If not, I'll stand submitted. Well, my question is why didn't you plead estoppel? Well, you already answered that. Okay. Thank you, Your Honor. Thank you, Your Honor. The next matter, Investec Management v. American Economy. That's submitted. Now we come to Mangus v. Ashcroft.
judges: Pregerson, Fisher, Bybee